ALABAMA GREAT SOUTHERN RY. CO. v. DANIELL *et al.*

[66 South. 730.]

1. RAILROADS. *Operation. Liability for negligence. Statutes. Trial. Directed verdict. Decree of proof. Injuries to trespassers. Comparative negligence. Instructions. Contributory negligence.*
   Under Code 1906, section 1985, providing that proof, that an injury to persons or property was inflicted by the running of railroad locomotives, or cars, shall be *prima facie* evidence of the negligence of the company's employees, it is not necessary any more than it was before its enactment, that the proven facts and circumstances should exonerate the defendant, that is, that it should appear therefrom that he acted with due care, before he can be relieved of liability. Under this statute when the facts and circumstances have been ascertained the jury must be able to say therefrom, that the defendant was guilty of negligence, otherwise he cannot be held.

2. SAME.
   In order that the statutory presumption may be overcome the fact and circumstances must not be left to conjecture; the evidence must be of such a character that from it the jury can determine what these facts and circumstances are, but when they have been determined, the statute has served its purpose and can no longer be invoked.

3. TRIAL. *Peremptory instruction. Degree of proof.*
   The height to which evidence must rise in the scale of proof in order to entitle a party litigant to a peremptory instruction,

is very much greater than that to which it must rise, in order to entitle such a party to the verdict of a jury.

4. RAILROADS. *Injury to trespassers. Comparative negligence.*

While the negligence of a trespasser in going to sleep on a railroad track is very great, still it is for the jury to say in an action for his death, how, under the circumstances, it compared with the negligence, if any, of defendant's employee, and to then diminish the amount of damages allowed accordingly.

5. RAILROADS. *Injury to trespassers. Instructions. Contributory negligence.*

In an action for the death of a trespasser on a railroad track, an instruction that it is not contributory negligence *per se* to be on a railroad track at a place where a person has no right to be, is erroneous without the qualification that his being there at the time and under the circumstances or his failure to use his senses and act with ordinary care while there may be negligence.

6. SAME.

Even if such an instruction had been correct, it should not be given when the evidence showed that the trespasser had gone to sleep on the railroad track, since such conduct is negligence as a matter of law.

7. RAILROAD. *Injury to trespassers. Duty of railroads.*

A railroad company is under no obligation to a trespasser on its tracks to keep a lookout or equip its locomotives with headlights, or if so equipped, to keep them burning; its only duty to him is not to wantonly or willfully injure him.

8. EVIDENCE. *Injuries to trespassers. Admissions.*

Where, in a suit for the death of a trespasser on a railroad track, evidence was introduced that the trespasser stated, just before his death, that he was sitting on the track when he was struck it was error to exclude a further statement made by him, that it was his own fault.

9. RAILROADS. *Injuries to trespassers. Evidence. Relevancy.*

In an action for the death of a trespasser on a railroad track, evidence that a companion of the trespasser was also killed was admissible to show the cause of the trespasser's death, but evidence of the mutilation of such companion should have been excluded as tending to prejudice the jury. It was also improper to allow evidence that the train crew, which picked up the trespasser, who was living at the time, left the body of his companion where it was.

Appeal from the circuit court of Lauderdale county.

Hon. J. L. Buckley, Judge.

Suit by Mrs. E. L. Daniell and others against the Alabama Great Southern Railroad Company. From a judgment for plaintiffs, defendant appeals.

The instructions numbered 1 and 2 for plaintiffs, referred to in the opinion, were as follows:

"(1) If the jury believe from the evidence that the injury to the plaintiff was inflicted by the running of locomotives or cars by the Alabama Great Southern Railroad Company, then this is *prima facie* proof of the negligence of said railroad company authorizing a recovery by the plaintiff, and to overcome the statutory presumption it devolves upon the defendant railroad company to exculpate itself by establishing to the satisfaction of the jury such circumstances of excuse as to relieve it from liability; and the jury are further instructed that this statutory presumption cannot be overthrown by conjecture, and that the circumstances of the accident must clearly be shown, and the facts so proven must exonerate the railroad company from blame, and if it be not so proven and the attendant circumstances of the accident remain doubtful, then the railroad company is not relieved from liability, and the presumption controls, and the jury should find for the plaintiff.

"(2) The jury are instructed that if the facts in evidence do not disclose to your satisfaction how the accident occurred, but if they do disclose that the injury was inflicted by the running of locomotives or cars of defendant railroad company, then the law presumes that the injury was inflicted through the want of reasonable skill and care on the part of the defendant, or of its agents and servants, and the defendant cannot escape liability by evidence leaving it a matter of conjecture as to how the accident occurred, but the defendant must clearly show facts exonerating itself from liability, and in the absence thereof, it is your duty to find for the plaintiff

and assess the damages in pursuance of other instructions herein.''

*Catchings & Catchings,* for appellant.

In view of the elaborate discussion of section 1985 of the Code of 1906, providing that in an action against a railroad for personal injuries, proof of injury from the running of the cars or locomotive shall be *prima facie* evidence of negligence in reference to such injury, contained in the recent case of *Alabama & Vicksburg Railroad Co.* v. *Thornhill,* decided December 22, 1913, and reported in 63 So. 674, it is unnecessary to review the various decisions construing this statute. *Fuller* v. *Railroad Company,* 100 Miss. 705; *Railroad Company* v. *Cole,* 100 Miss. 173; *Mobile etc., R. Co.* v. *Stroud,* 64 Miss. 784; *Vicksburg Railroad Co.* v. *McGowan,* 62 Miss. 682; *Dooly* v. *Mobile etc., R. Co.,* 69 Miss. 648; *Louisville, etc., R. Co.* v. *Williams,* 69 Miss. 631. See, also, *Westbrook* v. *Mobile etc. R. Co.,* 66 Miss. 560; *Vicksburg* v. *McLain,* 67 Miss. 4; *Louisville, etc., R. Co.* v. *Hirsh,* 69 Miss. 126; *Railroad Co.* v. *Moore,* 101 Miss. 768; *Louisville & Nashville R. Co.* v. *Chocranm,* 16 So. 797; *Midland R. Co.* v. *McGill,* 77 Am. St. Rep. 52; *Illinois Central R. Co.* v. *Graves,* 75 Miss. 362; *Railroad Co.* v. *Hunnicutt,* 98 Miss. 272.

It follows from what has been said, that instructions 1 and 2, which were given at the request of plaintiffs, should have been refused. *Vicksburg & M. R. R. Co.* v. *McGowan,* 62 Miss. 682. In 2 Wigmore on Evidence, 1053, it is said that admissions are not subject to the ordinary rules for testimonial qualifications as to personal knowledge, etc. This court itself has expressly held that statements made by the injured person as to who was at fault are competent. *Southern Railway Company* v. *McLellan,* 80 Miss. 700.

The judgment appealed from was founded altogether upon the statutory presumption of negligence as defined

and construed in instructions to the jury, and we respectfully submit will, if permitted to stand, result in depriving appellant of its property without due process of law in violation of the fourteenth amendment to the Constitution of the United States.

*G. Q. Hall* and *Hall & Jacobson,* for appellee.

·The lower court properly submitted this case to the jury. *V. & M. R. R. Co.* v. *Hamilton,* 62 Miss. 503; *New Orleans, M. & C. R. R. Co.* v. *Cole,* 101 Miss. 173; *Easley* v. *A. G. S. R. R. Co.,* 96 Miss. 396; *Natchez & Company* v. *Crawford,* 99 Miss. 697; *Railroad Company* v. *Carroll,* 102 Miss. 830; *Mississippi Central Railroad Company* v. *Robinson,* 64 So. 838; *A. & V. R. R. Co.* v. *Thornhill,* 63 So. 674; *Bedford* v. *L. N. O. & T. R. R. Co.,* 65 Miss. ——; *Jefferson* v. *Southern Railway Company,* 62 So. 643; *C. I. Co.* v. *Stead,* 95 U. S. 161, 24 L. Ed. 403; *R. R. Co.* v. *Carroll,* 103 Miss. 830; *N. O., M. & C. R. R. Co.* v. *Harrison,* 61 So. 655; *N. O., M. & C. R. R. Co.* v. *Cole,* 101 Miss. 173; *Railroad Company* v. *Brooks,* 85 Miss. 275, 38 So. 40; *Yazoo R. Co.* v. *Landrum,* 89 Miss. 399, 42 So. 675; *Easley* v. *Railroad Co.,* 96 Miss. 399, 50 So. 491; *Railroad Co.* v. *Hunnicutt,* 53 So. 617; *Fuller* v. *R. R. Co.,* 56 So. 783; *Railroad* v. *Phillips,* 64 Miss. 704, 2 So. 537; *Crawford* v. *St. L. & S. F. R. Co.,* 102 Miss. 269; *Mitchell* v. *N. O. & N. E. R. R. Co.,* 36 So. 1.

No error was commited in granting and refusing of instructions. We respectfully submit that the .court below made no error in granting and refusing of instructions as alleged by counsel for appellant in their brief on pages 23 to 31 inclusive. Appellant first complains of instructions number one and two, given for the plaintiff in the court below. Both of these instructions simply announce the law of the case as imposed by section 1985, of Code of 1906. *Miss. Central Railroad Co.* v. *Robinson,* 64 So. 838; *R. R. Co.* v. *Carroll,* 60 So. 1013; *R. R. Co.* v. *Robinson,* 64 So. 838; *Vicksburg & M. R. R. Co.* v. *Mc-*

*Gowan,* 62 Miss. 682; *Railroad Company* v. *Hardy,* 88 Miss. 745; *Railway Co.* v. *Floyd,* 99 Miss. 533; *R. R. Co.* v. *Hardy,* 88 Miss. 432; *Williamson* v. *State,* 95 Miss. 671; *Sou. Ry. Co.* v. *Floyd,* 99 Miss. 519; *Miss. Cent. R. R. Co.* v. *Pillows,* 58 So. 483; *Hooper* v. *State,* 83 Miss. 402; *Scates* v. *State,* 64 Miss. 644; *Manhaffy* v. *R. & B.,* 100 Miss. 122.

No error was made in admitting and excluding evidence. In support of our contention, we cite *Bloom* v. *McGrath & Compton,* 53 Miss. 258; *Lipscomb case,* 75 Miss. 559. The effect of the judgment appealed from does not deprive appellant of its property without due process of law in contravention of the fourteenth amendment of the United States.

In response to the last assignment of error made by counsel for appellant on pages 41, 42, 43, 44, and 45 of their brief, we deem it sufficient to say that this alleged error has been so completely disposed of by both the supreme court of the United States and the supreme court of Mississippi that we will content ourselves to quote from the opinion of Smith, J., on page 178 of volume 101, Mississippi Reports, wherein he said the following in the case of *New Orleans, M. & C. R. R. Co.* v. *Cole*: "Appellant further contends that, if section 1985 of the Code is to be construed as we have herein construed it, then it is in conflict with the fourteenth amendment to the Federal Constitution in that it deprives a railroad company of the equal protection of the laws and of its property without due process of law. This contention has been disposed of by the opinion of the supreme court of the United States in the case of *M. & K. C. R. R. Co.* v. *Turnipseed,* 219 U. S. 36, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, in which the court upheld the constitutionality of the statute with the construction put upon it by this court in the Brooks case before it."

The test laid down by the supreme court in the Turnip-seed case is this: ''If a legislative provision is not unreasonable in itself, prescribing a rule of evidence, in either criminal or civil cases, and does not shut out from the party affected a reasonable opportunity to submit to the jury in his defense all of the facts bearing upon the issue, there is no ground for holding that due process of law has been denied him.''

No construction placed upon the statute by the court in any case, has deprived anybody of the opportunity to submit to the jury in his defense all of the facts bearing upon the issue.

SMITH, C. J., delivered the opinion of the court.

This is an action for damages resulting from the death of Harry Daniell, in which a judgment was rendered in the court below for appellees, who were plaintiffs therein. Appellees attempted only to prove a *prima facie* case of liability under section 1985 of the Code, and upon the court's overruling the motion to exclude this evidence from the jury, the defendants introduced a number of witnesses, from whose testimony it appears that on August 22, 1911, at about two-thirty a. m., appellant's passenger train No. 1, from Birmingham to Meridian, arrived at Cuba, a station in Alabama about two miles from the Mississippi-Alabama state line, and while there Harry Daniell, for whose death this action is brought, and John Shannon, were discovered upon the train ''stealing a ride.'' They were ejected therefrom without violence on the part of the railway employees or complaint on the part of Daniell and Shannon, and the train proceeded upon its journey. A little over two hours thereafter, that is, about four-thirty a. m., of the same day, appellant's freight train No. 214, also from Birmingham to Meridian, arrived at Cuba, and there passed appellant's freight train No. 72 from Meridian to Birmingham, this train No. 72 being the only one of appel-

lant's trains that had crossed the state line after it had
been crossed by passenger train No. 1. When train No.
214 arrived at the state line a few minutes after it left
Cuba, that is, at about four fifty-three a. m., Daniell was
discovered sitting on the railroad right of way about ten
feet from the track, suffering from injuries from which
he afterwards died, and lying near was the dead body
of Shannon, horribly mutilated. Daniell was taken in
charge by the crew of this train and carried to Meridian,
and placed in the Mattie Hersee Hospital, where he died
the following afternoon. Train No. 72 crossed the state
line at about four twenty-five a. m., and was the only
train which had crossed this line between the time it was
crossed by train No. 1 and the arrival thereat by train
No. 214, so that it, train No. 72, as is conceded by counsel
both for appellant and appellee, was the only train which
could have caused the death of these two persons.

When he was discovered on the track Daniell told ap-
pellant's conductor in charge of train No. 214, and af-
terwards Dr. Reynolds, who treated him for his injuries,
that he and Shannon walked to the place where the acci-
dent occurred, sat down upon the track, and went to
sleep, "and that he didn't know anything until he waked
up and found he had been struck by a train." Appel-
lant's employees in charge of train No. 72 testified that
the train was equipped with all the necessary appliances
and that they were then in good order; that each one of
them was attending to his duties at the time the train
crossed the state line, and each of them stated that he
did not see Daniell and Shannon on the track, and did
not know that they had been struck by the train until
notified thereof after they had been discovered by the
crew of train No. 214. The engine was equipped with an
ordinary oil-burning headlight, which at the time was
lighted, and by means of which an object could be seen
on the track on the occasion in question for a distance of
not exceeding one hundred and fifty feet. The train was.

running at a speed of twenty or twenty-five miles an hour, and could not be stopped in less than one thousand feet.

In the testimony of the engineer appears the following questions and answers.:

"Q. What were you doing at the time you passed that point between the stations of Kewanee and Cuba and along about the Mississippi-Alabama state line, particularly on the Mississippi side of it? A. I was attending to my duties on the engine. Q. Where do those duties place you? A. Place me on the engineer's side, on the right-hand side of the engine. Q. On the seat provided for the engineer? A. Yes, sir. Q. Well, what were you doing? A. I was running the engine. Q. Well, what were you doing, if anything, with reference to keeping a lookout? A. I was keeping a lookout; that is my duty at all times when I have got the engine in motion. Q. Were you in fact doing that? A. Yes, sir. Q. Was your headlight burning or not when you passed along there between those stations of Kewanee and Cuba? A. Yes, sir; it was burning. Q. Was it burning or not when you reached the station of Cuba? A. Yes, sir; the headlight was burning at Cuba. Q. State whether or not you met on the railroad track at any point between the stations of Kewanee and Cuba or about the Mississippi state line any persons on the track, either walking or sitting, or in any way on the track or close enough to your train to be in danger of being struck by it. A. I did not. Q. State whether or not you saw the deceased, Harry Daniell, at that place. A. I did not. Q. State whether or not you had any knowledge or warning or notice of any kind, at or about that place, that Harry Daniell or any other person was on the railroad track in a position of danger to be struck by your train. A. No, sir; did not. Q. State whether or not you have any personal knowledge at all of Harry Daniell, or any other person,

being struck or injured by your train No. 72 at that place or at any point between Kewanee and Cuba. A. No, sir.

. . . . . . . . . . . . . . . . .

"Q. You could see an object that was on the track? A. If it was put on the track, I could; yes, sir. Q. I said on the track. A. Well, in the track, maybe down on the side; I say up in the middle of the track. Q. Is your line of vision confined to any particular part of the track? A. Well, the principal light is in the middle of the track. Q. I didn't ask you that, I asked you, in looking ahead, do you restrict your observation to the center of the track or do you take in the whole track? A. The whole track. Q. And any object then on the track as large as a man you couldn't see further than one hundred and fifty feet? A. No, sir. Q. It don't make any difference what the object is, a man, or cow or horse, or anything, if you saw it on the track you would apply your brakes, wouldn't you? A. Yes, sir. Q. And sound the alarm? A. Yes, sir. Q. You didn't sound any alarm or apply any brakes, did you? A. No, sir. Q. And you didn't see anything on the track? A. No, sir."

A peremptory instruction was requested by appellant and its refusal is assigned for error. As Daniell was a trespasser upon appellant's railroad track, its employees owed him no duty to keep a lookout, and in fact owed him no duty at all unless and until he was seen by them in a position of peril. *Railroad Co.* v. *Harrison,* 61 So. 655. In order for appellees to recover, appellant's engineer must have seen Daniell on the track in time to have prevented the accident by the exercise of reasonable care on his part. The only evidence, if any, from which it can be said that the engineer did see Daniell is that he could have seen him one hundred and fifty feet ahead of his engine, and that since he says he was keeping a lookout at the time, he therefore must have and in fact did see him one hundred and fifty feet ahead of his engine. It is true that it was impossible for the engineer to have

stopped the train even had he seen Daniell, but it does
not appear from the evidence that the accident could not
have been avoided without stopping the train. It may
be that if the engiencr in fact did see Daniell one hundred
and fifty feet ahead of the train, he had time to, and could
have checked the speed of the train and sounded the bell
or whistle and had he done so the accident might have
been avoided. Since there is no testimony in the record
as to what the engineer could have done with reference
to checking the speed of the train, or sounding the bell or
whistle, and since the judgment of the court below must
be reversed on other grounds, we deem it best not to
pass upon the refusal of this peremptory instruction.
We, therefore, express no opinion upon the sufficiency
of the evidence to warrant a finding that the engineer
in fact did see Daniell in time to have avoided the acci-
dent by the exercise of reasonable care.

Complaint is made of appellees' first and second in-
structions, which instructions the reporter will set out
in full.

One of the objections to these instructions, as we un-
lerstand the brief of counsel for appellant, is that by
them the rules governing the burden of proof were vio-
lated and a greater burden placed upon appellant than it
was called upon by section 1985 of the Code to bear; that
they entirely change "the rule of evidence which pre-
vails in other civil cases, and substitute therefor the rule
of the criminal law which requires a prosecuting to prove
its case beyond a reasonable doubt." The language in
these instructions, which it is claimed put upon the de-
fendant a greater burden than it was called upon to bear;
is that wherein the court charged the jury in the first in-
struction that it devolved upon the appellant "to excul-
pate itself by establishing to the satisfaction of the jury
such circumstances or excuses as will relieve it from lia-
bility; and the jury are further instructed that the statu-
tory presumption cannot be overthrown by conjecture,

and that the circumstances of the accident must be clearly shown, and the facts so proven must exonerate the railroad company from blame;'' and in the second instruction that ''the defendant must clearly show facts exonerating itself from liability,'' otherwise their verdict should be for the plaintiff.

In *Railroad Co.* v. *Thornhill*, 63 So. 674, practically all of the prior decisions of this court dealing with the presumption of negligence arising from proof of injury by the running of the locomotives or cars of a railroad company were reviewed, and, among other things, it was pointed out that:

''When the facts and circumstances under which the injury was inflicted have been ascertained, the presumption of negligence created by the statute disappears, and the defendant's negligence *vel non* must then be determined alone from such facts and circumstances,'' but that ''even though the facts and circumstances are in evidence, and although there may be no conflict therein as to what these facts and circumstances are, unless they justify the court in directing a verdict, it is proper to charge the jury, on request of the plaintiff, that proof of injury by the running of the cars is *prima facie* evidence of negligence, and on request of defendant that, since the facts and circumstances under which the injury was inflicted are known, they will determine whether or not the defendant was negligent solely therefrom without resorting to any presumption of negligence.''

As was further pointed out in that case, the only effect of section 1985 of the Code is to relieve the plaintiff from proving the facts and circumstances of an injury and to shift the burden of so doing to the defendant, but when this burden has been met and the evidence discloses ''the doing or omission of every act from the doing or omission of which an inference of negligence *vel non* could be drawn,'' the verdict of the jury must then be arrived at in the same manner as it would have been

108 Miss. 24

in the absence of the statute; that is, it "must then be according as they (the facts and circumstances) disclose the presence or absence of due care on the part of the defendant."

It is not necessary, under this statute, any more than it was before its enactment, that the proven facts and circumstances should exonerate the defendant—that is, that it should appear therefrom that he had acted with due care on the occasion in question—before he can be relieved from liability. On the contrary, under the statute, as before its enactment, when the facts and circumstances have been ascertained, the jury must be able to say therefrom that the defendant was guilty of negligence; otherwise, he cannot be held liable.

In order that the statutory presumption may be overcome, the facts and circumstances must not be left to conjecture; the evidence must be of such character that from it the jury can determine what these facts and circumstances are, but when they have been determined, the statute has served its purpose and can no longer be invoked.

The language hereinbefore quoted from the first of these instructions is taken almost literally from the opinion of this court in the case of *Railroad Co.* v. *Brooks,* 85 Miss. 269, 38 So. 40, and was approved in *Railroad Co.* v. *Landrum,* 89 Miss. 399, 42 So. 675; *Easley* v. *R. R. Co.,* 96 Miss. 396, 50 So. 491; *R. R. Co.* v. *Hunnicutt,* 98 Miss. 272, 53 So. 617; *Fuller* v. *R. R. Co.,* 100 Miss. 705, 56 So. 783; *Railroad Co.* v. *Cole,* 101 Miss. 173, 57 So. 556; and *Railroad Co.* v. *Thornhill,* 63 So. 674. In the Brooks, Landrum, Hunnicutt, Fuller, and Cole cases, the court had under consideration rulings of the lower courts on requests by the defendant railroad companies for instructions peremptorily charging the juries to find verdicts in their favor, and in using the language here in question, was setting forth what the evidence must disclose before it can be said, as matter of law, that the pre-

sumption of negligence created by the statute has been met and overthrown, so that nothing remains to be determined by a jury.

The height to which evidence must rise in the scale of proof in order to entitle a party litigant to a peremptory instruction is, of course, very much greater than that to which it must rise in order to entitle such a party to the verdict of a jury. In *Swan* v. *Liverpool, etc., Ins. Co.,* 52 Miss. 707, this court quoted with approval the following statement made in *Perry* v. *Clarke,* 5 How. 500, with reference to the circumstances under which a peremptory instruction should be given:

" 'The evident tendency of all the cases is against the exercise of such a power as that claimed in the present instance, unless in cases where there can be no room for doubt, and this is the extent to which they go.' To this we yield our unqualified assent. It is a delicate power, and one which should be used with the greatest possible caution. If there be any room for doubt, such a charge ought not to be given."

Again, in *Whitney* v. *Cook,* 53 Miss. 559, it was said:

"Such an instruction is proper only where, all the facts in evidence being taken as absolutely true, every just inference from them failed to maintain the issue."

The rule invoked by the instructions here under consideration is one which should always be acted upon by the court in determining whether a peremptory instruction should be granted, but was not intended to be given in charge to the jury as a guide to be followed by it in arriving at its verdict.

In the *Easley case, supra,* no question of the granting or refusing of an instruction predicated upon the presumption of negligence created by the statute was involved. The court simply referred to the language used in the Brooks case in order to show that one of the instructions granted the defendant railroad company, and

which set forth a hypothetical statement of facts, constituted reversible error.

In the *Thornhill case, supra,* which was decided after the case at bar was tried in the court below, although an instruction in practically the same language as one of those here under consideration was granted to the plaintiff, the judgment of the court below was affirmed. It will be observed, however, from the statement of the case that the court was not there considering whether the instruction imposed a greater burden of proof upon the appellant than it was called upon by the statute to bear, but was simply responding to the contention that all of the facts and circumstances under which the injury was inflicted were in evidence, and therefore the jury should not have been charged at all with reference to the presumption of negligence created by the statute. That case may be misleading in as far as the precise question here involved is concerned, but it is in fact not in conflict with the rule here applied, for the reason that this rule was not there under consideration by the court. All that was said in that case is reaffirmed, and is not intended to be in any wise departed from by anything here said.

It follows from the foregoing views that the court erred in granting the two instructions here under consideration.

Complaint is also made by counsel for appellant of one of appellees' instructions, by which the jury were charged in accordance with our comparative negligence statute. The ground of this objection is that in going to sleep upon the track Daniell "was guilty of an act so rash as almost to warrant the inference of willful suicide," and therefore the statute has no application. There is no merit in this contention. Conceding for the sake of the argument that counsel are correct in saying that the statute has no application in a case where it appears that the injury was intentionally brought about by the party injured, it was for the jury to say whether such was the

case here.   The negligence of Daniell in going to sleep
on the track was great, but it was for the jury to say
how, under the circumstances, it compared with whatever
negligence they should find that appellant's employees
were guilty of, and to then diminish the amount of dam-
ages allowed accordingly.

Appellees' sixth instruction charged the jury that:

"It is not contributory negligence *per se* to be on a
railroad track at a place where a person has no right to
be.   A person's being there is a condition but for which
injury could not be done him by the locomotive or cars,
but his being there is not what constitutes contributory
negligence."

This instruction should not have been given.   The lan-
guage in which it is couched is a literal, though never-
theless a mutilated, quotation from the opinion of this
court in *Railroad Co. v. McGowan,* 62 Miss. 696, 52 Am.
Rep. 205; for it omits the sentence immediately follow-
ing the one quoted, which is essential to be taken into con-
sideration in understanding what the court there held.
What the court in fact said was this:

"It is not contributory negligence *per se* to be on a
railroad track at a place where the person has no right
to be.   A person's being there is a condition but for
which injury could not be done him by the locomotive or
cars, but his being there is not what constitutes contribu-
tory negligence.   Being there at such a time and under
such circumstances as may be shown, or failing to use his
senses as becomes him, and to act under the circumstances
with ordinary care and caution to avoid harm, may con-
stitute contributory negligence, which will prevent re-
covery."

The instruction should not have been given, however,
even had it properly set forth what the court in the Mc-
Gowan case said, for the reason that while being on a
railroad track is not *per se* contributory negligence, go-
ing to sleep on such a track under the circumstances here

in evidence is negligence as a matter of law, it being hard
to conceive of an act more devoid of care and caution
than that. Instructions, though quoted *verbatim* from
an opinion of the supreme court in a similar case, are not
necessarily correct, for the language used by the court
may have been proper when taken in connection with the
facts of the case then under consideration, but may not
have been intended to announce a principle of universal
application, and may be erroneous as applied to the facts
of another case in which it is sought to be used as a guide
for the jury.

The court refused to instruct the jury for appellant:

"That the defendant's engineer was not bound to keep
a lookout for persons walking along the track, or sitting
upon the railroad track in the nighttime, at a place be-
tween stations, for purposes of their own convenience,
nor is the defendant railroad company under any obliga-
tions to such persons to equip its locomotives with head-
lights, or to see that the headlights are burning, but its
only duty and obligation to such person is to not wan-
tonly or willfully injure him."

This instruction should have been granted. The only
duty which appellant owed to Daniell was to abstain
from inflicting upon him a willful and wanton injury. It
was under no obligations to him to keep a lookout, to
equip its locomotives with headlights, or, if so equipped,
to keep them burning. *Railroad Co.* v. *Harrison,* 61 So.
655. The error in refusing this instruction was partially,
though not wholly, cured, by other instructions granted
at the request of appellant which partially announced,
in different and less clear and concise language, the rule
here sought to be invoked.

Several other instructions requested by appellant
charging the jury in effect as it was sought to be charged
by the instruction hereinbefore set out, were modified
by the court so as to hold appellant liable in event its
employees could have discovered the presence of Daniell

upon the track by the exericse of ordinary care. The instructions as modified were not read to the jury, and the modifications should not have been made.

Dr. Reynolds, a witness introduced by appellant, testified to the statement, made to him by Daniell before his death, that he was sitting on the railroad track when he was struck by the train. In adidtion to this, appellant sought to prove by this witness that a part of Daniell's statement to him was that "it," referring to his being struck by the train, "was his own fault." This evidence, on objection by counsel for appellee, was excluded. It may be, as contended by counsel for appellee, that the objection to this ruling of the court was not made in the court below in such manner as to reserve it for this court, as to which we will express no opinion; but in order that the matter may not be in doubt when the case is again tried, we will say that the evidence was competent and should have been admitted for such consideration as the jury chose to give it. 2 Wigmore on Ev. 1053; *Railway Co. v. McLellan*, 80 Miss. 700, 32 So. 283.

After the evidence had disclosed that Daniell had been struck by a running train, appellees, over the objection of appellant, were permitted to show, on the cross-examination of appellant's witnesses, the mutilated condition in which the body of Shannon was found, and the fact that his blood and brains were smeared on and scattered along the track. It is almost impossible to prove that Daniell was struck by this train without the evidence at the same time disclosing that Shannon was also struck by it. The evidence with reference to the condition of Shannon's body, and the fact that his blood and brains appeared on the track, however, should not have been admitted. Conceding that such testimony might have been of some value in determining whether or not Shannon and Daniell were struck by a train, that fact was not in doubt, and the evidence objected to shed no light whatever upon the question at issue—this is, the negligence *vel non* of

appellant's employees in the management of the train—
and served only, in the language of counsel for appellant,
"to shock the sensibilities of the jury in regard to a mat-
ter which had no relation to the case."

The court also, over the objection of appellant, admit-
ted evidence that when Daniell was put on the train and
carried to Meridian, the body of Shannon was left by ap-
pellant's employees lying on the track where it had been
found.   This evidence should not have been admitted. Its
harmful effect, however, was probably cured by other
evidence introduced on behalf of appellant, showing why
the body was left as it was, and what steps were taken to
care for it.

*Reversed and remanded.*