## Columbus & G. Ry. Co. *v.* Phillips.

(Division A.   March 16, 1931.   Suggestion of Error Overruled April 13, 1931.)

[133 So. 123. No. 29085.]

Gardner, **Odom** & **Gardner,** of Greenwood, for appellant.

392

O. L. Kimbrough, of Greenwood, for appellee.

**Cook, J.**, delivered the opinion of the court.

The appellee, Liza Phillips, instituted this suit in the circuit court of Leflore county, seeking to recover damages for personal injuries alleged to have been sustained by her as a result of the derailment of a train of ·the appellant company, upon which she was a passenger. The declaration was in two counts, the first one being predicated upon the alleged unsafe· and dangerous condition of the train equipment, and the second alleging that 'the derailment was the result of the unsafe, dangerous, and defective condition of the roadbed and track at the point where the derailment occurred. Upon the trial of the

cause there was a verdict and judgment in favor of the appellee for the sum of two thousand five hundred dollars, from which this appeal was prosecuted.

The appellee offered evidence to show that she had paid the fare and was a passenger on the appellant's train at the time it was derailed; that the coach in which she was riding was thrown from the track and many of the seats therein demolished; that she was thrown against a seat in the coach and thereby injured. She also offered the evidence of several witnesses as to the extent of her injuries, and the state of her health before and after the derailment.

The appellant introduced all of its employees who were connected with the operation of the derailed train, who testified in detail as to their observations of conditions made immediately after the derailment. The testimony of these witnesses was to the effect that appearances indicated that the trucks of the tender of the engine first left the track about one hundred yards east of a trestle; that the engine came to a stop on or just after it passed off this trestle, while the tender and baggage coach turned over on the south side of the track; that the coach in which the appellee was riding partially turned over on the same side of the track just as the front end of it reached the trestle; that the trestle was badly torn up and a number of rails were warped and twisted; that they examined the train and trucks of the tender and found no defect therein which could have caused the derailment; that they particularly examined the flanges on the trucks of the tender and found that they were not broken; that they examined the track at the point where the trucks had gone off the rails and found no apparent defect therein; and that from their inspections and knowledge of the condition of the train and equipment and roadbed they were unable to determine the cause of the derailment. The conductor also testified that the rules of the company required that trains be inspected before

leaving the terminus at Columbus, Mississippi, and that he took charge of the train supposing that it had been properly inspected and was in good condition, and that the cursory inspections of the train made by him at Columbus and Winona, Mississippi, disclosed no defect therein.

A master mechanic from the yards at Columbus testified that the engine and tender had been in the yards at Columbus for some weeks prior to the day of the derailment; that he inspected them thoroughly on the day before they left Columbus; that they were then in good condition; that he inspected the entire locomotive and especially the trucks of the tender and found no broken flanges; and that he made a thorough inspection at the scene of the derailment to determine, if possible, the cause of it, but was unable to determine the cause. He also testified that the engine in question was purchased as a second-hand engine from the Mobile & Ohio Railroad Company about twelve years before, and that the shops in Columbus were equipped to do all necessary repairs to locomotives.

The appellant also introduced its roadmaster, who testified that he was thoroughly familiar with track and construction work, and that he made a personal inspection of the lines of the appellant on an average of twice each week; that he made such an inspection on the 4th and 5th of February prior to the derailment on the 11th of that month, and again on the 10th of February; that on both occasions he inspected the track at the point of the derailment and found the rails, ties, and general condition of the track to be good. As to the nature of these inspections, however, he testified that they were made by looking at the track as he rode over it on a motor-car running about fifteen miles per hour, or from the rear platform of a passenger coach while traveling from thirty-five to forty miles per hour. He further testified that he made a thorough examination at the scene of the derail-

ment on the day following it, and that he was unable to find anything in the condition of the track that could have caused it, and was unable to determine from his investigation why the tender trucks had jumped the track. He further testified that the track at that point was of standard construction; that the ties were what are known as treated ties and had been in use only about six months; and that the ballast used at that point was washed gravel. The section foreman in charge of the maintenance of the track on the section within which the derailment occurred was not introduced as a witness.

The first contention of the appellant is that the undisputed evidence introduced by it shows that it was guilty of no negligence, having exercised the highest degree of care and diligence as to every duty owing to the appellee, and consequently that the peremptory instruction requested by it should have been granted.

When the appellee showed by evidence that she was a passenger on the appellant's train and was injured by the derailment of the coach in which she was riding, a prima-facie presumption arose that the injury was due to the negligence of the company or its servants. To rebut this presumption the appellant offered evidence tending to show that it had exercised that high degree of care and diligence required of it in the transportation of passengers, and that it was guilty of no negligence which caused or contributed to the derailment. This testimony consisted of detailed statements of the employees as to their observations at the scene of the wreck, the frequency and nature and character of the inspections made of the locomotives and coaches and the roadbed, ties, and rails. No witness who was directly in charge of the construction and maintenance of the roadbed and track was introduced, and there was no evidence as to the time that should elapse between inspections of the roadbed and track, or as to whether the inspections that were made were sufficient and proper, or in accordance

with proper and approved railroad methods and operation. The roadmaster testified that he had filled that position with the appellant for twenty-two years, and that so far as he knew no new rails had been placed on the track at the point of the derailment; that rails shrink and wear from use; and that he inspected the track about twice a week by observing it while riding over it on a motorcar traveling at the rate of twelve or fifteen miles per hour, or on a passenger train traveling about thirty-five miles per hour. Upon all the testimony, and particularly in view of the nature and character of the testimony of the master mechanic as to his inspections of the locomotive and tender, we think it was for the jury to say whether or not an inference of negligence should be drawn therefrom, and that consequently the peremptory instruction requested by the appellant was properly refused.

The appellant next complains of an instruction granted to the appellee, which reads as follows:

"The court instructs the jury that the defense of the railroad company in this case that the derailment of the coach in which plaintiff was riding was an accident which could not have been averted by the exercise of the highest care and skill is what is termed in law as affirmative defense. If you believe from the evidence in the case that plaintiff was a passenger on defendant's train, that the coach in which she was riding was derailed and that plaintiff was thereby injured, the plaintiff is entitled to recover to the full extent of such injuries, unless you believe from a preponderance of the evidence that said derailment was caused by a latent or concealed defect or condition which defendant by the exercise of the highest degree of care and utmost skill could not have discovered. If the evidence leaves it uncertain as to the cause of the derailment the defendant has not met the burden cast upon it to overcome the prima-facie presump-

tion of negligence above stated, and in such case plaintiff is entitled to a verdict in such sum as the jury believe from the evidence will compensate her for all damages sustained by her.''

This instruction is in effect peremptory, and is erroneous for several reasons. In the first place, it is contradictory, in that it informs the jury that the appellee could not recover if it believed from a preponderance of the evidence that the derailment was caused by a latent or concealed defect or condition which the railway company could not have discovered by the exercise of the highest degree of care and utmost skill, while in the next sentence the jury were instructed that ''if the evidence leaves it uncertain as to the cause of the derailment the defendant has not met the burden cast upon it to overcome the prima-facie presumption of negligence above stated, and in such case, plaintiff is entitled to a verdict in such sum as the jury believe from the evidence will compensate her for all damages sustained by her.'' It thus appears that the jury was, in the first sentence quoted, advised that the appellant could exonerate itself from liability by showing that it exercised the highest degree of care; while in the next sentence it was informed that the utmost skill and the highest degree of care would not free the appellant of liability unless such evidence showed clearly the cause of the derailment, and consequently the jury was thereby left without any proper guide.

This instruction is likewise erroneous, in that it advised the jury that the appellee was entitled to recover ''if the evidence leaves it uncertain as to the cause of the derailment.'' Under the evidence offered in this case, this statement in the instruction made it peremptory in favor of the appellee, as no witness undertook to give the cause of the derailment, but on the contrary they all testified that they were unable to determine the cause thereof. It is not true that the appellee is necessarily entitled to a

verdict if the evidence offered by the appellant leaves it uncertain as to the cause of the derailment. In this case the appellant did not, by its evidence, attempt to show or explain the cause of the derailment, but it undertook to show that whatever may have been the cause of the derailment, it was not due to negligence on its part or any failure to exercise the high degree of care required of it, and before the appellee would be entitled to a verdict the jury must be able to say from the attendant facts and circumstances in evidence that the defendant was guilty of negligence in failing to exercise the degree of care required of it. Alabama G. S. R. Co. v. Daniell, 108 Miss. 358, 66 So. 730; Gulf & S. I. R. Co. v. Odum, 133 Miss. 543, 98 So. 60, 61.

In the latter case the court stated that the explosion which caused the injury was "an unexplained mystery," but held that the attending facts and circumstances shown by the evidence completely rebutted the presumption of negligence of the defendant in reference to the injury, and that "it excluded any and all facts and circumstances tending to place responsibility for such explosion upon appellant," and that consequently the trial court should have granted the peremptory instruction requested by the defendant. In the case at bar we are of the opinion that it was for the jury to say whether an inference of negligence should be drawn from the attendant facts and circumstances shown by the evidence, but for the error above indicated the judgment of the court below will be reversed and the cause remanded.

Reversed and remanded.