GULF & S. I. R. Co. *v.* BOONE ET AL.

[82 South. 335, Division B.   No. 20768.]·

1. RAILROADS. *Killing person on track. Question for jury.*

Under the facts in this case, which was a suit for the killing, by a running train, of a person on the track, the court held that it was a question for the jury as to whether the *prima-facie* case of negligence under Code 1906, section 1985 (Hemingway's Code, section 1645), was overcome.

2. RAILROADS. *Killing person on track. Rightful presence. Presumption.*

Where a soldier was killed by a train while guarding a railroad bridge it must be presumed that he was placed on duty by and with the consent of the railroad company and was rightfully there.

3. NEGLIGENCE. *Railroads. Killing person on track. Contributory negligence.*

That a person killed by a railroad train on the track was guilty of contributory negligence, will not bar a recovery, but only affect the amount thereof.

4. APPEAL AND ERROR. *Harmless error. Instruction.*

In a suit for the killing of a person on the track by a railroad train an instruction as to overcoming the *prima-facie* case

under the statute, though subject to criticism is harmless where the defendant did not put in evidence all the facts and circumstances and so did not fully meet the burden imposed by the statute.

5. Railroads. *Killing person on track. Overcoming prima-facie case.*
The *prima-facie* presumption of negligence arising on proof of the killing by a train is not met by conjecture nor even by testimony which has been sufficiently discredited.

6. Death. *Damage. Loss of companionship.*
Loss of companionship is an element of damages for death which brothers and sisters of deceased may recover.

7. Death. *Recovery by brothers. Value of life expectancy.*
For the death of an orphan, his surviving brothers and sisters may recover the present value of his life expectancy.

8. Death. *Damages. Values of life expectancy. Evidence.*
Recovery for present value of life expectancy of a soldier must be based on evidence, and speculation cannot be indulged in as to what trade or profession he would have engaged in when discharged, or as to what he would have earned by any future employment.

9. Death. *Damage. Suffering.*
Recovery for death cannot be enlarged on account of the horror and terrible shock of a tragedy, where deceased was knocked unconscious and died soon thereafter without visible signs of pain or suffering, and where there is no element of punitive damages.

10. Death. *Damages. Excessive recovery.*
Recovery by surviving brothers and sisters for death of an orphan brother, twenty-one years old, and a private in the army should not exceed the sum of $20,000.

Appeal from the circuit court of Covington county. Hon. W. H. Hughes, Judge.

Suit by Clark Boone and others against the Gulf & Ship Island Railroad Company. From a judgment for plaintiff, defendants appeal.

The facts are fully stated in the opinion of the court.

*T. J. Wills,* for appellant.

The statute provides, section 1985, Code of 1906, that proof of an injury inflicted by the running of locomotives or cars shall be *prima-facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury. Appellees, plaintiffs below, proved the injury and death of the deceased, Douglass Boone, by the operation of this northbound freight train, and relied upon the presumption of the statutes for the right to recovery for the injury so inflicted.

There was no effort made on the part of the plaintiffs to show how the injury was inflicted; there was no charge of a specific negligence or violation of duty on the part of the railroad company in inflicting the injury. Plaintiffs relied implicitly on the presumption of the statute to make out their case.

The defendant to meet the presumption of the statute and to discharge the burden cast on it by the presumption, showed, by the engineer, the facts and circumstances under which the injury was inflicted. The facts and circumstances surrounding the injury and death of the deceased, as explained by the engineer completely exonerates appellant from all blame.

In the Daniels case this court stated with reference to the *prima-facie* statute: "It is not necessary under this statute any more than it was before its enactment, that the proven facts and circumstances should exonerate the defendant, that it should appear therefrom that he had acted with due care on the occasion in question— before he can be relieved from liability. On the contrary, under the statute, as before its enactment, when the facts and circumstances have been ascertained, the jury must be able to say therefrom that the defendant was guilty of negligence; otherwise he cannot be held

liable." *Ala. & Great Southern R. R. Co.* v. *Daniels,* 66 So. 730.

This announcement of the law is clear. The statute does not place upon the defendant the burden of proving itself free from blame; it places upon the defendant the burden of showing the facts and circumstances under which the injury was inflicted. When the facts and circumstances, are thus shown, the question of liability or nonliability, must be determined accordingly as the facts and circumstances disclose the presence or absence of due care on the part of the defendant.

This brings us to a consideration of the duty appellant owed the deceased, Douglass Boone, at the time he met his death. For the railroad company to be liable it must have owed to the deceased, Douglass Boone, a duty, which duty it wantonly or negligently breached, and the breach of which directly caused his injury and death.

It is fundamental that in every case involving actionable negligence, there are three constituent elements: First, the existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; second, the breach of that duty owing to the injured party by the defendant; third, injury resulting from the failure of the defendant to perform this duty. All these elements must co-exist. If either one is absent, no liability will arise.

"It is elementary that actionable negligence exists only when one negligently injures another to whom he owes the duty created by contract or operation of law, of exercising care." *B. & O. S. W. R. R. Co.* v. *Cox,* 64 N. E. 119; *Thiele* v. *McManus,* N. E. 327. See to the same effect 1 Thompson on Negligence, par. 3, and *Par Western Union Telegraph Co.* v. *Schriver,* 4 L. R. A. (N. S.) 678.

What duty did appellant owe the deceased, Douglass Boone, that it failed to perform the breach of which was

the proximate cause of his injury and death? It is necessary for us to examine carefully the relationship that each owed the other at the time of accident. The railroad was engaged in the operation of trains, it was being urged by the Government to speed up its transportation facilities and relieve the conjestion of the traffic cost upon it by the preparation for war. The sovereign power had cast upon it the duty of speeding up its trains. That it might not assume any greater risk by so doing, the same sovereign power placed detachments from its army to guard the bridges against destruction by any human agency whatsoever. The deceased, Douglass Boone, was a guard charged with the duty of protecting the bridge against destruction that would menace the safety of appellant's trains, while in rapid transit in obedience to the government commands.

The deceased, Douglass Boone, was on guard duty charged with the obligation of being alert at all times, to use every one of his faculties, sight and hearing, to prevent the approach of anything earthly, human or otherwise near to or on this bridge that would menace its safety. Appellant knew that the deceased was there as a guard and knew what his duties were.

Could appellant reasonably anticipate that it would be necessary for it to blow a whistle to give this guard notice of any approaching train? Did it owe him the duty of running the train slowly over the bridge that it might protect him and guard his safety as it went by? To say that the railroad company owed him the duty of blowing the whistle or ringing the bell to give him warning of the approach of the train, and that, too, when the train was equipped with a bright headlight that the other guard could see when the train was a mile and a half away, would be to reverse the order of things. It would place upon the appellant railroad company, the duty of protecting the guards from injury rather than

that the guards should be charged with the duty of protecting the railroad company from injury.

The most that can be said as to the duty imposed upon appellant, or the greatest duty that could be imposed upon appellant towards the deceased guard, would be a duty of keeping a lookout for him, and if he should be discovered in a place of peril, not to wilfully, wantonly, or negligently injure him after his peril had been discovered. This duty is not warranted by the relationship of the parties. ·Certainly it cannot be contended by any one, that the appellant railroad company owed to him a greater duty or any other duty than the one just stated.

The record in this case shows that with this duty imposed or assumed, that the railroad company did not violate such duty, but discharged it completely. The injury and death was inflicted as a result of the deceased's own wrongful act.

It is a well recognized principle of law that when the engineer in charge of a train sees a person on the track that he has a right to presume that he will get off of the track and in the clear. It is a much stronger presumption of law and of reason that when a person is on a track and a train is approaching and he gets off the track into a place of safety, that he will remain in a safe place. The engineer certainly had a right to indulge the presumption that having gotten off the track into a place of safety that he would remain in a place of safety.

The engineer was keeping a look-out and discovered the deceased on the track when he was a sufficient distance away to stop his train before he reached the point where the deceased was. He brought his train under control so that he could and would have stopped before he reached the deceased if deceased had remained on the track. Deceased got up and got off the track. The engineer indulging the presumption that he had a

right to act upon that the deceased would remain in a
place of safety, engaged himself in the discharge of the
other duty imposed upon him, that is, the operation of
his train. He put the train under headway again. When
the train was from forty to sixty feet away the deceased
guard ran back up on the dump to remove his overcoat
and gun which he had left on or near the track, and in
this attempt he brought his head in the pathway of the
pilot and was killed.

There was a discrepancy as to the grade of the dump
at the point where the injury ws inflicted. Plaintiffs
contending that it was eight or ten feet high while the
engineer said two or two and a half feet high. The
height of the grade is immaterial. The wound was in
the top of the head and the steeper the grade of the
embankment the less stooping would be the position of
the deceased to bring his head in contact with the steel
step of the pilot that unquestionably inflicted the injury.

This court in the case of *L. N. O. & T. R. R. Co.* v.
*Williams*, 69 Miss. 631, in discussing the liability of the
railroad company for the death of a girl who was struck
and killed while lying flat on the track, said: "The
test of responsibility is, did the striking of the child
by the train occur after the engineer had seen—not
might or ought to have seen—that is, discern or dis-
tinguish the girl?"

The test is, was everything done after the peril of
the injured party was discovered that could be done, to
avoid the injury? It is clear and evident from the
record that the proximate cause of the injury and death
of private Douglass Boone, was the result of his own
negligent and unthoughtful conduct. He was on guard
duty and should not have been lying down on the track.
When his position on the track was discovered and the
train brought under control, so that it would stop before
it reached him, he got up and got off the track on the
ground, in a place of safety. While in a place of safety

and the train working steam and gaining momentum and speed, and when it was within forty to sixty feet of him, he ran back up on the track in the pathway of the train, and was injured and killed. His act in so doing was the proximate cause of the injury. It was the wrongful and negligent act that produced his death. It cannot be said that appellant violated any duty that it owed him, or was negligent in any way, unless it can be said that appellant should have stopped its train before it reached the point where he had been lying on the track and waited till he communicated with the crew and advised them that they might proceed; until he advised them that he would stay in a place of safety.

· The burden was on the plaintiffs to prove the infliction of the injury by the operation of a train of cars. This burden the plaintiffs met, and rested their case. The statute cast upon the defendant the burden of showing how the injury was inflicted. This burden the railroad company assumed and discharged by clear, unequivocal evidence. In meeting this burden, however, the railroad company did it not in denial of the proof introduced by the plaintiffs or the presumption raised by the statute, but by providing the facts and circumstances under which the injury was inflicted and thereby negatives its negligence in the infliction of the injury. This proof was not met by the plaintiffs by evidence in denial which would show or tend to show that the injury was inflicted in some other way. *Chicago, St. Louis & N. O. R. R. Co.* v. *Packwood,* 59 Miss. 280; *A. & V. R. R. Co.* v. *McCoy et al.,* 63 So. 221.

Appellant requested the court below to peremptorily charge the jury to find for the defendant; this the court refused to do. This instruction should have been granted.

The law is that the presumption with which the defendant is clothed, that his acts were free of negligence, is overcome by the presumption of the *prima-facie* stat-

ute until the facts are circumstances are shown. When the facts and circumstances are shown, the presumption of the *prima-facie* statute ceases. The presumption of rightful conduct on the part of the defendant is re-established and protects him from liability unless the facts and circumstances so proven convicts him of wrongful or negligent conduct. The instruction of the court given plaintiffs denies the defendants the benefit of the presumption of rightful conduct when the facts and circumstances are shown, and convicts it of wrongful conduct unless the defendant can prove itself innocent of wrongful or negligent acts. The trial court with this instruction reversed and repudiated the very principle upon which our law is based. The defendant is convicted of wrongful or negligent conduct with this charge unless it proves itself innocent. The court tells the jury that the defendant is to be held liable unless it proves itself innocent. This instruction was error and should not have been given.

The verdict of the jury was excessive. It was shown that the deceased, Douglass Boone, was twenty-one years old. That he contributed to his sister twenty dollars per month. His life expectancy was forty-one and fifty-three hundredths years. This present worth of his contribution of two hundred and forty dollars a year during the entire period of his life expectancy was two thousand six hundred and forty-three dollars and twenty cents. He was in an unconscious condition and never regained consciousness, there could be no recovery for pain and suffering. He was not with his sister and brothers and there could be no loss of companionship. If there had been liability, it could not have been for a sum in excess of three thousand six hundred and forty-three dollars and twenty cents.

The court below erred in not setting aside the verdict as excessive on the motion of appellant. We submit to the court that there is no liability in this case. The

judgment of the court below should be reversed and judgment entered here for defendant.

*Anderson, Vollor & Kelly,* for appellee.

We are sure it is unnecessary for us to submit any extended remarks upon section 1985, of Code 1906, known as our *prima-facie* statute. If the law under that section has not been settled by this court, with all the numerous decisions which have in the last few years been rendered with reference to it, then it seems to us that it is impossible ever to get a matter firmly settled.

Counsel frankly admits in his brief that plaintiffs fully met the *prima-facie* feature of that statute when they rested their case, and that it then developed upon the defendant, appellant, to clearly show all the facts and circumstances of the accident and that such facts and circumstances so shown must exonerate the defendant, or appellant from blame or negligence in the premises.

It is certain, therefore, in our judgment that the question of the liability of the company in this case was one entirely for the jury. It was certainly for the jury of say whether or not the defendant had met the *prima-faxie* proposition: 1. Whether it had given fully, fairly and clearly all the facts and circumstances of the accident: 2. Whether those facts and circumstances as developed by the evidence exonerated the defendant from blame, or whether they showd that it was not guilty of negligence in the killing of this young man.

If this position be true of course it follows as day the night that the peremptory instruction asked for by defendant was properly refused.

This man was put there by the United States Government to do the highly important work of the War Department in taking care of the means and avenues of transportation of the government service, and in takig care of the property of this very corporation. We

know of no duty at that time that was more important and should be more respected, and we know no obligation that could be higher on the part of the railroad company than to take care of these young soldiers in that arm of the work.    Mr. Meadows himself seemed to have had a higher conception of the obligation existing upon him as an engineer than that claimed by his counsel, for he tells you that when he approached the Brooklyn Bridge from the south that night he blew his signal whistle as for a crossing out of extreme precaution to the safety of the soldiers on guard duty at that time.   This statement from him whether true or not was at least creditable to him and challenges our admiration.  Unfortunately the other witnesses contradict the statement and say it is not true.    Even Evans says he never blew the whistle until he was within a hundred and fifty feet of Boone.    Morse says positively that he did not blow any whistle at that point.   We can but regret that Meadow's conception of obligation and his conduct did not correspond.

We will not undertake to follow counsel any further in his argument along that line, as we think the matter has been fully discussed and presented, but we will now go to the only real objection on the law feature that he makes, and that is his complaint about instruction No. 1 given the plaintiffs by the court, found on page 163 of the record.   First, he says this is not the law, and second, that it is in conflict with the rule laid down in the *Daniels Case*, 108 Miss. 358.

Our reply is that it absolutely follows the law as announced in the *Thornhill Case* in 106 Miss. 387, which settles all of the law on this question previously announced by our supreme court, and in addition, is an absolute copy and transcript of instruction No. 2 approved by this court in the case of *I. C. R. R. Co.* v. *Gray*, 118 Miss. 612.    This instruction No. 2 is not found in the case as reported, but it apears in the record on page 33 there-

of.   The instruction approved in the Thornhill case has
lately been approved by this court in the case of *Vicks-
burg Light & Traction Co.* v. *Gessell,* 72 So. 156. It is
not necessary, therefore, for us to attempt to reconcile
the Daniels case with the Thornhill case, or the Gray
case, or the Gessell case.   The court in all its recent
utterances has emphatically settled the law as announced
in this instruction, and we are not going to do a vain
thing by worring the court with a re-discussion of the
settled proposition.

However, even if there was any doubt as to the cor-
rectness of this instruction the error, if any, was abso-
lutely cured by instructions given on behalf of the de-
fendant, which are found on pages 165 and 166 of the
record.   These instructions are most liberal for the de-
fendant and announces every feature of the law that
could be claimed by it in this controversy, and we have
no fight to make on the court's action in being thus liberal
with it.

There is only one other proposition that is advanced
by appellant which we desire to notice, and that is
its complaint that the verdict of the jury was excessive.
It predicates its complaint upon the fact that Douglas
Boone was twenty-one years old; that he contributed to
the support of his sister only twenty dollars a month,
and that his life expectancy was forty-one and fifty-three
hundredths   years,   and   further   that   he   was   in
an unconscious   condition   after   he   was   hurt,   and
never   regained   consciousness,   so · that   there   can
be no recovery for pain and suffering.   The con-
tention, in our judgment, is untenable.   This young
man had been in the army since before he arrived at
the age of majority; he was only drawing the meagre
salary of a private; he had not yet reached that point
in life where he could have done his best service and
realized its highest achievements.   Out of his little
meagre salary of a soldier he was Contributing to the

support of this little fourteen or fifteen-year-old sister, sixteen at the time of the trial of this case, twenty dollars a month. We do not know what he could have done in the future, with his vigorous constitution and his capacity for earning money, had he lived. We submit that it would be entirely unfair and unjust to limit his earning capacity to what it was at that time. Had he lived to get out of the army he might have, and probably would have earned a salary equal to that of any young man in the whole country.

Then counsel speaks about there being no loss of companionship to his sister, and that that fact cannot be considered on the question of damages. Of course not while he was temporarily performing the duties of a loyal American soldier; he had been her companion before he enlisted, and we have every reason to believe that he would have been again after his army service was over. Even though he was in the army he was supporting that little sister, but after his death she was compelled to go to the orphans' home for this support and maintenance, as she had no other source of support.

The other point he makes is that we can get nothing for his pain and suffering because he was unconscious and insensible to pain and suffering. There is no warrant for this assumption. It is true that Meadows says that he was unconscious when he got to him, and that he could not say that he had ever regained consciousness while he was around, not certain on that point, but his testimony shows that after he carried him in the caboose up to Hattiesburg and placed him in the hospital he did not remain with him but a short time, but the evidence shows that the young fellow lived many hours after that before he finally expired. The other witness, especially George Gibson, page 57, of the record, says that he seemed to be in great pain and suffering during the time, and while he may not have talked or may have been unable to talk, yet there is no

evidence whatever that he was not thoroughly conscious and thoroughly sensible to all of the pain and suffering that that horrible wound had inflected upon him. Such suffering cannot be measured in dollars and cents, neither can the loss of such a brother to this little sister and her two minor brothers.

In the case of *Y. & M. V. R. R. Co.* v. *Wallace,* 91 Miss. 492, the appellee had lost both legs by the negligence of the railroad company, and the jury gave him a verdict for fifty thousand dollars. This court on appeal reduced the amount to thirty thousand dollars, and allowed the judgment to stand at that figure. In the case of *V. S. & P. R. R. Co.* v. *Beard,* recently before this court *in Banc,* a verdict of twenty-five thousand dollars for the loss of one hand was affirmed. In neither of these cases was there anything more than ordinary negligence involved. Many other cases might be cited as precedents. Surely when a life has been taken under the circumstances appearing in this record, thirty thousand dollars will not for a moment be considered excessive.

We confidently say, it your honors please, that this verdict is not excessive, and that it should be allowed to stand just as it is, and let these plaintiffs get some compensation, little though it be, for the loss of this fine young man whose life was so ruthlessly cut off at its very beginning.

*E. L. Dent* and *A. W. Dent,* for appellees.

The right of appellee to recover is clearly fixed and defined in the case of *Gulf & Ship Island Railroad Company* v. *Prince,* 79 So. 62. In the case at bar, the whole case was submitted to the jury under appropriate instructions and the jury returned a verdict for the plaintiff.

In the case of *Leake* v. *Gulf & Ship Island Railroad Company,* 91 Miss. 406, the court held: "In a suit by a passenger for injuries suffered in a collision between a railroad train running at an unlawful speed and cars standing on a side track, caused by a misplaced switch, the defense of the railroad company being that the switch was misplaced by a miscreant, a peremptory instruction should not be given for defendant because the engineer of the colliding train testified that just as this engine came near the switch he saw an unknown man throw it and run away, there being evidence tending to discredit his statement."

The physical facts in the Leake case conflicted with the statement of the engineer and the court held that the case should have been submitted to the jury on the evidence for them to decide the facts. The physical facts before the jury show that the deceased could not have gotten off of the track, as engineer Meadows says he did, for seven or eight feet and then got back on the track, so as to have been struck by the engine.

Our courts, in the case of *Anderson* v. *Cumberland Telegraph Company,* 86 Miss. 341, announces the following rule: "Failure of a party to introduce a witness who can be had and who is precumed to be friendly and who knows exculpating facts, if any one does, raises a presumption that such facts do not exist."

### *Prima-Facie* Instruction.

The appellee in the court below sought and obtained the *prima-facie* instruction to which he was entitled under the statute. For the convenience of the court, we copy said instruction: "The court instructs the jury at the request of plaintiffs, that if Douglas Boone was struck and killed by the engine or cars of the defendant while running on its tracks, then it is *prima-facie* negligence on the part of the defendant railroad company to exonerate itself from liability and in order to do this the evidence must show not only how the injury

occurred but it must also appear from the evidence that the defendant company, in the running and operation of said train, were free from negligence and unless the jury are satisfied from the evidence that the defendant company and its servants were free from negligence in the operation of said train or cars that struck and killed said Boone they will find for the plaintiffs.

The appellant now vigorously complains of the court below in granting this instruction. He sought and obtained the converse of the *prima-facie* instruction and for the convenience of the court we copy this instruction: "The court charges the jury for the defendant that while proof of injury inflicted by the running of an engine is *prima-facie* evidence of want of reasonable skill and care of the defendant, this presumption must yield to the facts when shown, and in this case if you find that the facts under which the deceased, Douglas Boone, was killed have been sufficiently shown, then the presumption of the statute must yield, and no such presumption exits and you will decide the case from such facts of the manner of his death as is thus shown by all the evidence." This court held:

"An instruction and the language employed therein must be read in connection with all the instructions in the case." *Miss. Central R. R.* v. *Lott,* 118 Miss. 816.

The appellee's *prima-facie* instruction and the appellant's instruction relative thereto announce the correct rule, and there is not the slighest conflict in the law as announced in these instructions and the law as declared in numerous decisions of this court. The *prima-facie* instruction as given the appellee has been approved and upheld in various forms in the following cases: *Y. & M. V. R. R.* v. *Phillips,* 64 Miss. 693; *Railroad Company* v. *Brooks,* 85 Miss. 269; *Railroad Company* v. *Landrum,* 89 Miss. 339; *Fuller* v. *I. C. R. R. Co.,* 56 So. 783; *Y. & M. V. R. R.* v. *Hammon,* 56 So. 503; *Y. & M. V. R. R. Co.* v. *Doggett,* 67 Miss. 250;

*Easley* v. *A. G. S. Ry. Co.*, 50 So. 491; *A. G. S. Ry. Co.* v. *Hunnicut*, 53 So. 617; *Railroad Company* v. *Cole*, 57 So. 556; *Thornhill* v. *A. & V. Ry. Co.*, 106 Miss. 387; *Gray* v. *I. C. R. R. Co.*, 118 Miss. 612, So. 79, p. 812.

The *prima-facie* statute was peculiarly applicable to this case. It applies in all cases and to all persons when proof of injury to persons or property from the running of a locomotive or cars by the parties designated in the statute is made.

It appears from the evidence in this case and indeed was admitted by appellant, that the decedent was injured and killed by one of its running trains. Therefore a *prima-facie* case of negligence, under the act, was made against the appellant, and the burden of proof shifted. Our court says with reference to this statute: "Whenever a person or thing is struck on injured by "Locomotive or cars, the statute applies, that is its language, and we cannot limit it so as not to include all cases embraced by its items. "*Y. & M. V. R. R. Co.* v. *Phillips*, 64 Miss. 693-703.

It was shown beyond peradventure that the injury was inflicted by the running of the train. This is *prima-facie* proof of negligence authorizing a recovery by the plaintiffs. *Railroad Company* v. *Brooks*, 85 Miss. 269-75.

Since the evidence clearly showed that Landrum was killed by the running of the cars, the statute imposed upon this railroad company liability, unless the railroad Company met the burden imposed by the statute, and showed clearly that facts attending the injury, and by such showing exonerated itself from blame. *Railroad Company* v. *Landrum*, 89 Miss. 399-409.

The presumption created by statute is not a conclusive presumption but a *prima-facie* presumption and in all cases must yield to the facts, if the facts are shown. Presumption in all cases must yield to the facts, yet they fail not because of the law, but because of the

facts, and completely destroy the presumption; and hence when the statute, which is the law, gives this presumption, the courts have no right to make or change a different rule. In so doing the court is substituting judge-made law for statutory law. *Fuller* v. *I. C. R. R. Co.*, 56 So. 783-87.

Statutory presumption cannot be overcome by conjecture but it rests upon the defendant to exculpate itself by showing clearly the facts and circumstances of the accident and circumstances so proven must exonerate it from blame.

This statute devolves upon the railroad company, whose locomotive or cars in running inflict injury to exculpate itself from blame by showing that the circumstances under which the injury was done was such as to free it from liability. It cannot rely on presumptions or conjectures. It must show the facts attending the injury, and exonerate itself." *V. & M. R. R. Co.* v. *Hammond,* 56 So. 503.

"The *prima-facie* case for the plaintiff under our statute was thus made out, and it then became incumbent on the railroad company to relieve itself from liability by showing the circumstances of excuse, or justification for such killing. *C. & V. R. R. Co.* v. *Doggett,* 67 Miss. 250-3.

"It was shown, beyond peradventure, that the injury was inflicted by the running of a train. This was *prima-facie* proof of negligence, authorizing recovery by the plaintiff. To overcome this statutory presumption, it developed upon the appellant to exonerate itself by establishing to the satisfaction of the jury such circumstances of excuse as would relieve it from liability. But this statutory presumption cannot be overthrown by conjesture, the circumstances of the accident must be clearly shown, and the facts so proven must exonerate the company from blame. *Railroad Co.* v. *Brooks,* 85 Miss. 269.

In this case the court stated that the testimony of plaintiff left it a matter of conjecture as to how the accident happened. When this is the case this court has established in the case of *Railroad Company* v. *Brooks*, 85 Miss. 269, and *Railroad Company* v. *Landrum*, 89 Miss. 399, in construing this statute, that mere conjecture would not meet the burden of the statute, but that the testimony for the railroad company must be clearly shown how the injury occurred, and in showing this, show further such facts as exonerate the railroad company *Easley* v. *A. G. S. R. R. Co.*, 50 So. p. 491.

To overcome this statutory presumption it devolved upon the appellant to exonerate itself by establishing to the satisfaction of the jury such circumstances of excuse as would relieve it from liability. But this statutory presumption cannot be overcome by conjecture. The circumstances of the accident must be clearly shown, and the facts so proved must exonerate the company from blame. If the facts be not proven, and the attendant circumstances of the accident remain doubtful the company is not relieved from liability and the presumption prevails. *R. R. Co.* v. *Brooks*, 85 Miss. 269; *A. G. S. R. R. Co.* v. *Hunnicut*, 53 So. 617-18; *Railroad Company* v. *Cole*, 57 So. 556.

The court held in this opinion that unless circumstances surrounding parties at the time of the infliction of injury be known, it could not be ascertained what degree of care precaution or vigilance, if any was due from the company to party injured and consequently it could not say whether the company observed the necessary degree of care, precaution and vigilance required of it by law. Again we say but one of the employee witnesses was placed upon the stand and he was thoroughly and completely discredited.

In the *Fuller Case, supra,* Judge McLEAN, in rendering the opinion of the court, says: "Everything shown by the evidence may be true, and *non constat*

those in charge of the train may have seen and realized the perilous position of Mr. Fuller in time to have prevented injuring him by the exercise of reasonable care. On this point the evidence is silent, and consequently all the facts and circumstances relating to the injury are not in evidence.

The court simply held in the Fuller case that it was the duty of the railroad company to put its servants in charge of train on the stand and show they were free from blame when injury was inflicted. We might quote further from the *Thornhill Case, supra* and the *Gray Case, supra,* to show that this court has repeatedly held and reaffirmed the doctrine invoked by the appellee in the court below, however, we do not desire to weary the patience of this court.

We direct the court's attention especially to the *Gray* and *Thornhill Cases, supra.* The jury, we respectfully submit, was properly instructed as to the law of the case and on account of the grossly negligent way in which said train was operated fixed liability against the appellant and the appellant cannot justly complain. We respectfully desire to call the court's attention to the case of *Director-General Hinds* v. *Watson,* which was affirmed on June 2, 1919; the same *prima-facie* instruction is the same as in the case at bar.

### Award of Damages.

The appellant in this case did not even file the plea of the general issue. It filed no plea of contributory negligence, or the assumption of risk. It asked no instruction as to the award of damages. This court has held in the case of *Alabama & Ry. Co.* v. *McGee,* 117 Miss. 370, as follows: "The party seeking the benefit of the rule of diminishment of damages must invoke it by requesting proper instructions from the court with reference thereto." *Scales & Liyndsey* v. *Nix,* 108 Miss. 814.

In this case it is shown that a young, active, vigorous man twenty-one years old lost his life. A verdict of thirty thousand dollars, it is. true, is large, .but the injury—death is great, and therefore we submit, that thirty thousand dollars is not too much. It is true that he was a soldier, but if it were not true, that we had not had approximtely two and one-half million of his kind just about the time his case was tried, in all probability appellants great properties would be of little value. It is true that he was. a soldier, and only earning from his Government twenty dollars per month but distinguished counsel must remember that under this great Democratic Republic of ours that the prince and the pauper, the tramp and the millionaire, alike, must serve their country for the small pittance of twenty-dollars per month. While. counsel may discredit the value of a human like because he is a soldier in the service of his country, we have been unable to find either in the law books or in the bosom of the juries or the judges of the courts any authority or expressions to justify his conclusions.

In the recent case of *A. & V. etc, Et. al. Railroad Co. et al.* v. *W. W. Beard,* Affirmed March 11, 1919, —— So. ——, this court held that Beard, a soldier, was entitled to recover twenty-five thousand dollars for one hand, and surely if one hand is worth twenty-five thousand dollars the loss of a life of a young soldier who was negligently killed is worth thirty thousand dollars.

This case, we submit, should be affirmed. The law and the facts justify its affirmance for the full amount of the award of the jury.

STEVENS, J., delivered the opinion of the court.

This is an action for damages instituted by appellees as brothers and sisters of Douglas Boone, deceased, for the alleged wrongful and negligent killing of the de-

ceased by appellant railway company. Douglas Boone at the time of the unfortunate tragedy was a soldier in the United States army, and stationed as one of the guards at Brooklyn bridge on the line of the defendant company. On April 8, 1917, a detachment of soldiers was detailed to guard the railway bridge across Black creek. This detachment consisted of a sergeant, two corporals, and eight privates. Deceased was a private, went on duty at midnight on the morning of April 11th, and at about 2:30 a. m. was struck and fatally injured by the head locomotive of a long freight train going from Gulfport to Jackson. There were two guards on duty at the time, the other soldiers being asleep in their tents. Deceased was stationed at a post at the north end of the bridge some three hundred feet south of a public road which crossed at the unincorporated village of Brooklyn, and some three hundred and thirty feet south of the depot at Brooklyn. The track was straight a great distance, and the bridge with its approaches was some one thousand eight hundred feet long. There was no agent at the depot at 2:30 a. m., and no occasion for the freight train to stop at Brooklyn at this time. The train was what is known as a "double-header," being pulled by two engines, each of which was in charge of an engineer and fireman, and was running from twenty-five to thirty miles per hour. The engineer saw that he had struck a man and therefore stopped his train, and was the first to reach the injured man and to give warning to the other soldiers. Boone was thereupon placed on board the train and carried to a hospital in Hattiesburg, where he died about 12 o'clock of the same day. He was unconscious, and accordingly unable to speak or make any statement or outcry of any kind. Deceased was struck on top of the head, the wound starting "right at the edge of his hair and running straight back on top of his head about four inches long."

For the plaintiffs there was evidence tending to show
that this heavy freight train pulled by two engines was
being run at a high rate of speed, with knowledge that
soldiers were guarding at this long bridge, and that
the engineer gave no alarm until he was practically on
the deceased. Plaintiffs rely largely upon the *prima-
facie* statute (Hemingway's Code, section 1645 [Code
1906, section 1985]), there being no dispute of the
fact that the injury was inflicted by the locomotive' and
cars of the defendant company. For the defendant the
chief engineer, Dan Meadows, testified, and if his testi-
mony be true, there is no liability in the case. He testi-
fied that he saw an object on the track some one thousand
five hundred or one thousand six hundred feet away,
and, upon seeing this object, began to blow his whistle,
apply his brakes, and slow down his train. But upon
approaching closer 'the object, which then proved to be a
man, got up, got off the track, and walked some six or
eight feet from the track, and immediately returned to
the track and stooped over and attempted to pick up
and pull off the track his coat and gun, and was struck
by a bolt on the engine; that he had his train under con-
trol, and could have stopped it before reaching the object
which he saw on the track if the deceased had not got
up and jumped off; that when the deceased did jump off
witness released the brakes and commenced to put the
steam on again, and could not anticipate the deceased
running back to the track and stooping over as he did.
This was the only witness introduced by the defendant.
Engineer Evans was in charge of the second engine and
both engineers made reports of the accident. In con-
tradiction of the positive testimony of Meadows, the
plaintiff introduced the written reports filed by both
engineers, and also witnesses whose testimony tended
to prove that the injury could not have occurred in the
manner detailed by the witness Meadows. The written
report of the witness is somewhat in conflict in its de-

tails with the statements made by Evans. Evans states in his written report that Meadows was some one hundred and fifty feet away from Boone when the whistle was blown, and that nothing was done to stop the train, as it was impossible to stop. Certain witnesses for the plaintiff testify that Boone was stationed on an embankment, and that at the point of the injury there was an embankment down which the deceased would have to descend some ten or twelve feet if he had left the track and walked away some seven or eight feet, as testified to by Meadows; that it would have been impossible to walk away from the track and return and stoop down and be injured on the head in the manner detailed. In these and other conflicts not necessary to be detailed the trial court put the case to the jury, which returned a verdict for the plaintiff in the sum of thirty thousand dollars.

Appellant contends that the proven facts and circumstances completely exonerate the defendant from all blame or negligence, and that the peremptory instruction should have been given appellant. Instruction No. 1 for the plaintiff is also assigned for error, and the verdict is claimed to be excessive. Instruction No. 1 reads:

"The court instructs the jury, at the request of plaintiffs, that if Douglas Boone was struck and killed by the engine or cars of the defendant while running on its tracks, then it is *prima-facie* negligence on the part of the defendant, and it devolves upon said defendant railroad company to exonerate itself from liability, and in order to do this the evidence must show, not only how the injury occurred, but it must also appear from the evidence that the defendant company in running and operating of said train were free from negligence; and, unless the jury are satisfied from the evidence that the defendant company and its servants were free from negligence in the operation of said train or cars

that struck and killed said Boone, they will find for the plaintiffs.''

We will first dispose of the contention that the defendant was entitled to a peremptory instruction. The case was submitted to the jury on the theory that the testimony of 'the sole witness for the defendant was in conflict with the testimony offered on behalf of the plaintiff, and the verdict of the jury is justified under its view that the defendant had not fully and fairly shown how the injury was inflicted, and consequently our *prima-facie* statute applies. The conflicts in the testimony relate to the question as to whether the train was running on schedule time, whether any alarm was given, on the question as to exactly what effort the engineer made to avert the accident, and on the reasonableness of the engineer's testimony as to what the deceased did and how he received the fatal blow from the rapidly moving locomotive. It appears that a demonstration was made before the jury as to whether or not it was possible for Mr. Boone to have been struck either by a bolt on the sill of the engine or by a step on the front end of the engine; the plaintiff's testimony tending to show that it was impossible for the deceased to have been struck in the manner detailed by witness Meadows. We think there was sufficient conflict to put the case to the jury. There was a conductor, two firemen, two brakemen, and Evans, the other engineer, neither of whom was placed upon the witness stand. It was for the jury to say whether or not the defendant had overcome the *prima-facie* presumption of negligence. The jury was justified in concluding that no reasonable explanation has yet been given how the injury was inflicted, and in assuming that mystery still envelopes and beclouds the whole unfortunate tragedy. The witness Morse, the other guard on duty at the south end of the bridge, was positive in his testimony that the engineer did not blow any whistle at that point, and that no

effort made to give warning of the approaching train. It is contended by appellant that the status of Mr. Boone was that of a trespasser, or at least that the defendant company owed him no duty. The fact that he was not an employee or a passenger is emphasized. We doubt not that Mr. Boone was subject to criticism for placing himself in a position of peril. But this question could only go to the amount of recovery. It will profit little to declare the exact status of the deceased. Admittedly Mr. Boone was a soldier on active duty as a guard, and in the performance of his duties had a lawful right to be on the right of way, taking care of and guarding one of the means of transportation necessary for the government service, and in guarding a bridge of much importance to the defendant company in its business as a common carrier. We must assume that these guards were placed on duty by and with the full consent of the railway company, and Mr. Boone was certainly where he had a right to be so long as he did not voluntarily or negligently place himself in front of a moving train. Even though Boone was guilty of contributory negligence, plaintiff's cause of action was not thereby barred, and the question of contributory negligence was presented to the jury under proper instruction.

We do not approve instruction No. 1 as languaged, but under the facts of this particular case we do not regard this instruction as reversible error. It is subject to criticism, in that it does not apparently confine the defendant's negligence to such negligence as contributed in whole or in part to the injury complained of. It is further perhaps subject to criticism in using the word "satisfied" in the statement "unless the jury are satisfied from the evidence that the defendant company and its servants were free from negligence in the operation of said train or cars." It is further contended that under the *Daniells Case,* 108 Miss. 358, 66 So. 730,

"when the facts and circumstances have been ascertained, they must be able to say therefrom the defendant was guilty of negligence," and that here the presumption should yield to the facts. A sufficient reply to this argument is the showing that the defendant company did not put in evidence all of the true facts and circumstances, and consequently did not fully meet the burden imposed by our statute. This statute, though harsh and exacting, is not met by conjecture or even by testimony which has been sufficiently discredited.

The last and the most important point presented by this appeal is the complaint that the verdict of the jury is excessive. The testimony shows that the deceased was twenty-one years old, that he joined the army before the age of marjority, and served several months on the Mexican border, and at the time of his death was drawing the small salary of a private. He was contributing approximately twenty dollars a month to his fourteen year old sister, one of the plaintiff, and his life expectancy was forty-one and fifty-three hundredths years. He was in an unconscious condition, and never regained consciousness, and there can be no recovery for pain and suffering. Both father and mother are dead. There are two living brothers and one sister of the whole blood, but there are also four half-sisters and one half-brother. After the death of the mother the young sister of the whole blood went to live with her half-sister, and was living with this half-sister when Douglass Boone, the deceased, voluntered for the army, and she was living with one of her brothers at the time Douglas Boone was killed. There is no showing as to whether Douglas Boone intended to make military life his vocation, or whether he comtemplated being discharged upon the conclusion of peace, and no showing as to what business, if any, he would engage in upon being discharged from the army. His contributions to his sister amounted approximately to two hundred

and forty dollars a year and the present worth of this
contribution during the entire period of his life expec-
tancy would be approximately three thousand six hun-
dred forty-three dollars and twenty cents.

We think the plaintiff had a right to recover for loss
of companionship, but the amount of this recovery
should be influenced by the facts as outlined. *St. Louis,
etc., R. R. Co.* v. *Moore,* 101 Miss. 768, 58 So. 471, 39 L.
R. A. (N. S. 978, Ann Cas. 1914B, 597.   Under the
evidence it was not at all certain when Douglas Boone,
had he lived, would have returned to his brothers and
sisters, and whether the young sister, coplaintiff herein,
would live with him.

Under the authority of *Mississippi Oil Co.* v. *Smith,* 95
Miss. 528 48 So. 735, and *Cumberland Tel. & Tel. Co.* v.
*Anderson,* 89 Miss. 732, 41 So. 263, plaintiffs had a
right to recover the present value of the deceased's own
life expectancy.   But what was this expectancy worth?
Recovery must be based upon the evidence.   If we esti-
mate this value on the basis of salary received by a
private in the army, the amount could not well exceed
twelve thousand dollars or fourteen thousand dollars.
Viewed as a matter of sentiment the life of one of
the stalwart sons of America cannot be valued in terms
of dollars and cents.   The statute contemplates such
damages as can fairly be shown by human testimony.
Recovery cannot be enlarged on account of the horror
and terrible shock of a tragedy of this kind, where de-
ceased was knocked unconscious and died soon there-
after without visible signs of pain and suffering, and
where there is no element of punitive damages.   We
cannot leave the evidence and speculate as to what trade
or profession young Boone would have engaged in when
discharged from the army, or as to what he would earn
by any future employment of such character.   If per-
mitted to conjecture, we might as well assume that he
would marry and establish a home of his own.   We are

bound to conclude that the verdict is excessive. We reach this conclusion after carefully taking into consideration legal damages of every kind and character contemplated by the statute. If we give the plaintiffs the benefit of all doubt in the case, we are yet satisfied that recovery should be limited to an amount not exceeding twenty thousand dollars. If, therefore, the appellees will enter a remittitur in the sum of ten thousand dollars, a judgment for twenty thousand dollars and all costs in the trial court will be affirmed, otherwise the judgment appealed from will be reversed, and the cause remanded.

*Affirmed, with remittitur.*