ROBERTSON, Justice:
Mrs. Tinnie Slay, the widow of Staff Sergeant Harry M. Slay, for herself and *127 the two minor children of Slay, brought suit in the Circuit Court of Leake County, Mississippi, against William George Wilson for the wrongful death of her husband resulting from an automobile collision, which she alleged was proximately caused by the negligence of Wilson.
The jury returned a verdict for $9,999.99 (the exact amount sued for), and Wilson perfected his appeal to this Court. He contends:
“1. The lower court erred in overruling defendant-Appellant’s motion for a judgment notwithstanding the verdict, or in the alternative for a new trial.
“2. With particular reference to the said motion the lower court erred in:
(a) Refusing to grant defendant a judgment notwithstanding the verdict;
(b) Refusing to grant defendant’s requested peremptory instruction.
“3. That the verdict of the jury was contrary to the law and against the overwhelming weight of the evidence.
“4. That the verdict of the jury reflects bias and prejudice against the defendant.”
About 6:00 p.m. on June 13, 1969, the appellant was driving his Pontiac automobile in a northerly direction on the Natchez Trace about three miles north of the River Bend. His 14-year old son was sitting on the front seat with him and his wife was taking a nap on the back seat. Two cars were in front of him; one was towing the other. As appellant approached a long gradual curve to the left, he checked his rear view mirrors, both inside and outside the car, turned on his directional light and turned his car from the northbound lane across the center of the road to pass the two cars in front of him. Wilson testified that when his left front wheel was about 6 inches over the center line, he felt a slight impact on the left rear fender and glanced around in time to see a red Oldsmobile go off on the west shoulder of the road and continue on a collision course until it hit a pine tree about 258 feet distant. The impact with the pine tree completely destroyed the Oldsmobile and resulted in fatal injuries to the only occupant, Sergeant Slay.
Wilson testified that he had looked in his rear view mirrors about 5 or 6 seconds before he started his turn to the left to pass the cars in front of him, and that he didn’t see the Slay car. Wilson explained why he didn’t see the Slay car in this way:
“A. Well, I had come out of a curve for one thing, and this would perhaps account for it. And the other thing would be that he was traveling at such a high rate of speed that I would assume he just closed the distance behind me that quickly.”
No one in the Wilson car was injured. The only damage to the Wilson car was a long crease in the left rear fender which cost less than $100.00 to repair.
Section 8183, Mississippi Code 1942 Annotated (1956), provides:
“The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions and special rules hereinafter stated:
“(a) The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.
“(b) Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.” (Emphasis added).
Wilson and his son both testified that they did not hear a horn blow as Slay ap *128 proached to pass. Henry T. Hughlitt, the Supervisor Park Ranger on this section of the Natchez Trace, testified that there was a clear and unobstructed view of the Natchez Trace for 1300- feet south of the point of impact.
We think that there was sufficient evidence of negligence on the part of Wilson to justify the submission of this question to the jury. This was not a case for a peremptory instruction for the defendant, nor was it a case for a judgment notwithstanding the verdict. The trial court was correct in refusing to grant a peremptory instruction and also a judgment non ob-stante veredicto.
The appellant next contends that the jury completely disregarded the plaintiff’s instruction on comparative negligence, that this is crystal clear because the jury returned a verdict for the full amount sued for, $9,999.99.
We particularly note that both the deceased and Wilson were non-residents of this State. Sergeant Slay was stationed at Camp Hood, Texas, and appellant Wilson was a Baptist minister in Greensboro, North Carolina. Under the peculiar facts of this case, we think that the jury did heed this instruction on comparative negligence and did consider Slay’s negligence in driving at an unlawful and excessive rate of speed. We think that they did compare the negligence of Slay with the negligence of Wilson in deciding on the amount of their verdict.
It was stipulated that Sergeant Slay was 23 years of age, and that he had a life expectancy of 47.4 years. The proof was that at the time of his death he was making $3,241.82 per year. Even at that low rate of pay, without figuring any increase over the years, he would have earned $153,662.27 during his life expectancy of 47.4 years.
The jury was also instructed:
“The Court instructs the Jury for Plaintiffs that if you find for Plaintiffs, in awarding damages, you may take into consideration any or all of the following elements of damages, if any, which you believe from a preponderance of the evidence Plaintiffs sustained and will sustain as a direct and proximate result of the negligence, if any, of Defendant.
“1. The present value of the loss, if any, to Michelle Jean Slay, Harry Michael Slay, Jr. and Mrs. Tinnie Slay, the children and widow, respectively of Harry M. Slay, deceased, of the companionship of Harry M. Slay, Deceased, sustained and to be sustained by them as a direct result of the death of Harry M. Slay.
“2. The Present value of any services, support or contributions which you believe from the preponderance of the evidence, Michelle Jean Slay, Harry Michael Slay, Jr., and Mrs. Tinnie Slay, the children and widow, respectively of Harry M. Slay, deceased, would have received or which they had a reasonable expectation of receiving from Harry M. Slay, had he not been killed.
“3. The present net cash value, if any, of the life expectancy of the deceased, Harry M. Slay, at the time of his death.”
We feel that the jury considered this instruction, along with the comparative negligence instruction, in reaching their verdict. It is obvious to this Court that the jury also considered the proof as to the great worth of this young man’s life as compared to the amount sued for, in arriving at the amount of their verdict.
The judgment of the trial court is, therefore, affirmed.
Affirmed.
GILLESPIE, C. J., and JONES, BRADY and INZER, JJ., concur.