524 So.2d 308 (1988)
Lucille McGOWAN, Individually and on Behalf of the Wrongful Death Beneficiaries of John L. McGowan
v.
The ESTATE OF Ruby C. WRIGHT, Deceased, and A.J. Reese, as Administrator.
No. 57424.
Supreme Court of Mississippi.
February 3, 1988.
As Modified on Denial of Rehearing April 20, 1988.
*309 Polly J. Covington, Peter K. Smith, Ltd., Quitman, for appellant.
Thomas R. Jones, Bourdeaux & Jones, Meridian, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ZUCCARO, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Lucille McGowan, widow of John L. McGowan, Deceased, and A.J. Reese, Administrator of the Estate of John L. McGowan, deceased intestate, filed suit against the Estate of Ruby C. Wright in the Circuit Court of Clarke County, Mississippi, for damages, actual and punitive, as a result of the wrongful death of McGowan. The jury returned a verdict for the plaintiffs in the sum of nineteen hundred fifty-nine dollars fifty cents ($1,959.50), the exact amount of the funeral expenses and ambulance fees, and judgment was entered by the lower court in that amount. The plaintiffs have appealed and assign six (6) errors in the trial below.
On January 20, 1982, John L. McGowan was riding in 1970 Buick automobile owned and driven by Ruby C. Wright in a southerly direction on Mississippi State Highway 11. Jessie L. Hayden was driving his pickup truck in a northerly direction in the northbound lane of the highway, and the vehicles were approaching and meeting each other. The vehicles collided head-on in the northbound lane, resulting in the instant death of McGowan. Ruby C. Wright died eight (8) days later.
On September 30, 1985, this suit was filed against the Estate of Ruby C. Wright, Deceased, seeking actual and punitive damages for the wrongful death of McGowan. The case was heard March 13-14, 1986, and the trial judge granted a peremptory instruction on liability in favor of the appellants. The only question this Court deems necessary to answer is whether the damages were adequate and whether the judgment should be set aside and a new trial ordered on the issue of damages alone.

PUNITIVE DAMAGES
Punitive damages may be recovered in proper cases. In Bryant v. Alpha Entertainment Corp., 508 So.2d 1094 (Miss. 1987), the Court defined those circumstances under which punitive damages are allowable:
In negligence cases this Court has held "punitive damages are allowable only *310 upon proof of gross negligence or willful misconduct." Jesco, Inc. v. Shannon, 451 So.2d 694, 704 (Miss. 1984); Miss. Power Co. v. Jones, 369 So.2d 1381 (Miss. 1979); Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 141 So.2d 226 (1962). "Punitive damages are ordinarily recoverable only in cases where negligence is so gross as to indicate a wanton disregard for the safety of others." U.S. Industries v. McClure Furniture Co., 371 So.2d 391, 393 (Miss. 1979).
508 So.2d at 1098. See also Gardner v. Jones, 464 So.2d 1144, 1148 (Miss. 1985); Consolidated American Life Ins. Co. v. Toche, 410 So.2d 1303, 1304-05 (Miss. 1982).
The lower court granted punitive damages Instruction No. P-5 at the request of the plaintiff, which follows:
Punitive damages are added damages awarded for public service in bringing a wrongdoer to account, as an example to warn and deter others from repeating the same act. They are never awarded to benefit the injured party or as a matter of right, but rather to punish and to compel the wrongdoer to have due and proper regard for the rights of the public.
Punitive damages may be awarded Plaintiff if you find that the Defendant's reckless acts, if any, were committed by gross negligence indicative of a wanton and wilful disregard of the rights of others.
The evidence indicates that neither vehicle was exceeding the lawful speed limit, but the collision occurred in the northbound lane, not the proper lane of travel for Ruby C. Wright, just past a one-street intersection (another northbound street intersected Highway 11 at this juncture).
The award of punitive damages is within the discretion of the jury, which has very wide latitude in determining whether punitive damages should be granted and, if so, the amount of those damages. The jury may have concluded that, even though the collision occurred in Ruby Wright's wrong lane, she was guilty of only simple negligence. The punitive damage Instruction P-5 told the jury in part "They are never awarded to benefit the injured party or as a matter of right, but rather to punish and to compel the wrongdoer to have due and proper regard for the rights of the public." The jury may have concluded that, since the wrongdoer Ruby Wright lost her own life, such was punishment enough.
At any rate, the judgment may not be set aside, the jury having been properly instructed on the law of punitive damages.

ACTUAL DAMAGES
John L. McGowan was sixty-seven (67) years old at the time of his death with a life expectancy of 13.6 years. His annual income consisted of one hundred sixty-eight dollars ($168.00) per month Social Security and two hundred forty-one dollars ($241.00) per month via Veterans' Administration benefits, aggregating four hundred nine dollars ($409.00) per month. Lucille McGowan, the widow, testified that the amount of income received by the deceased would be required to support himself; and that it was not enough to support her.
Lucille McGowan testified in her own behalf. She and John L. McGowan were married October 30, 1943. No children were born of the marriage. John went into the service during World War II and was stationed at Ft. Devens, Massachusetts. Subsequently, Lucille moved to New York and for approximately nine (9) months, prior to John's reassignment overseas, she was able to see him on weekends. Thereafter, she began working in a factory to support herself and was so employed until approximately one (1) year after the accident in which John lost his life. John returned from overseas in February or March, 1946, and since that time, John and Lucille had lived apart. Intermittently, over the years, appellant visited John. Particular times were in 1950, 1955, 1958, and 1971. John never visited her. She and John had only spoken over the telephone for the last eleven (11) years of his life. The last time she saw him was in 1971.
Appellant produced only one item of writing she had received from John, a Christmas card mailed to her in 1981. She *311 had no explanation for the lack of mail correspondence.
John McGowan, the deceased, and Ruby C. Wright had lived together for approximately fifteen (15) years. At the time of his death, McGowan was living with Ruby Wright in her house trailer. According to Mary Gaddis, Ruby Wright's sister, Wright and McGowan had "lived like husband and wife" for the 15 years prior to their deaths.
The jury verdict in the sum of $1,959.50 in actual damages represented the aggregate sum of eighteen hundred ninety-five dollars ($1,895.00) funeral expenses and sixty-four dollars fifty cents ($64.50) ambulance fees.
Instruction P-4 submitted to the jury the following elements of damages:
1. Present net cash value at the time of his death of John L. McGowan's life expectancy.
2. Ambulance bill in the sum of $64.50 incurred by his estate.
3. Funeral and burial expenses in the sum of $1,895.00 incurred by his estate.
4. Damages for the loss of society and companionship are allowable even though Mr. and Mrs. McGowan were not living together as a family unit at the time of his death, ... .
The jury had all the facts before it on the question of damages for the loss of society and companionship and saw and heard appellant Lucille McGowan testify as to that element of damage. The jury obviously concluded that appellant had no loss of society and companionship and, therefore, suffered no damage.
Instruction D-8 defined the present net cash value of John McGowan's life expectancy, which included reduction of his gross annual income by the amount he would have spent on his own personal living expenses, and, again, the jury obviously concluded that there was no net cash value to his life expectancy.
Mississippi Code Annotated § 11-7-13 (Supp. 1984), provides that in a wrongful death action the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all the damages of every kind to any and all parties interested in the suit. This statutory language has been held to include (1) the present net cash value of the life expectancy of the deceased, (2) the loss of the companionship and society of the decedent, (3) the pain and suffering of the decedent between the time of injury and death, and (4) punitive damages. Jesco, Inc. v. Whitehead, 451 So.2d 706, 710 (Miss. 1984); Sheffield v. Sheffield, 405 So.2d 1314, 1318 (Miss. 1981); Dickey v. Parham, 331 So.2d 917, 918-919 (Miss. 1976); Thornton v. Ins. Co. of North America, 287 So.2d 262, 265 (Miss. 1973); Scott v. K-B Photo Service, Inc., 260 So.2d 842, 844 (Miss. 1972); Boyd Constr. Co. v. Bilbro, 210 So.2d 637, 643 (Miss. 1968).
The verdict of the jury reflects that the only damages sustained by the appellant were the funeral expenses and ambulance fees to the estate of the deceased, which were proper items of recovery, and that there were no damages sustained by the widow, Lucille McGowan. We are unable to say that the jury verdict reflects passion or prejudice in the failure to return damages for the appellant Lucille McGowan. Under the facts of this case, it is not shocking to the judicial conscience.
The judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
ROBERTSON, Justice, dissenting from denial of petition for rehearing:
At issue in this case is the measure of damages recoverable for the wrongful death of John L. McGowan. At the time of his death McGowan was 67 years old. He had a life expectancy of 13.6 years, a fact no one disputes. Immediately prior to his death McGowan had an income stream of $409.00 per month. The jury, however, found liability but in effect held that there was no compensable value to McGowan's *312 remaining life expectancy. Notwithstanding that this result is contrary both to law and logic and as well to common experience, the majority affirms.
I begin with our wrongful death statute, Miss. Code Ann. § 11-7-13 (Supp. 1987). In language which has long been a part of that statute, we find it declared that
In such action the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all damages of every kind to the decedent and all damages of every kind of any and all parties interested in the suit. [Emphasis added]
In our early interpretations of this language, we considered as among the damages recoverable the "present value of the deceased's life expectancy." See Gulf and Ship Island Railroad Co. v. Boone, 120 Miss. 632, 659, 82 So. 335, 338 (1919); Mississippi Oil Co. v. Smith, 95 Miss. 528, 534, 48 So. 735, 736 (1909). In Boone, we posed the rhetorical question "What was this expectancy worth?" and answered that "Recovery must be based upon the evidence." 120 Miss. at 659, 82 So. at 338.
At this early time it was not clear that we were speaking exclusively of a present net pecuniary value of the deceased's life expectancy had he lived. Concededly, our early cases did suggest that present value damages were "rooted in the earnings of the deceased during his expectancy." Belzoni Hardware Co. v. Cinquimani, 137 Miss. 72, 95, 102 So. 470, 474 (1924); New Deemer Manufacturing Co. v. Alexander, 122 Miss. 859, 897, 85 So. 104, 107 (1920). Several decades later, however, the phrase "present net cash value of the life of the deceased" had crept into our cases. See Reed v. Eubanks, Admx., 232 Miss. 27, 40, 98 So.2d 132, 138 (1957); Bush v. Watkins, 224 Miss. 238, 243-44, 80 So.2d 19, 21-22 (1955); Gordon v. Lee, 208 Miss. 21, 34, 43 So.2d 665, 667 (1949). More recently our cases repeat as if by rote the "present net cash value" language. See, e.g., Sheffield v. Sheffield, 405 So.2d 1314, 1318 (Miss. 1981); United States Fidelity & Guaranty Co. v. Pearthree, 389 So.2d 109, 112 (Miss. 1980); Wilson v. Slay, 259 So.2d 126, 128 (Miss. 1972).
My concern is that we have come to ignore the unmistakeable breadth of the language of the statute. However legitimate may be inclusion of the elements of wrongful death damage as recited by the majority (see p. 311, majority opinion), we have no authority to ignore the legislative directive that wrongful death damages include "all the damages of every kind to the deceased... ." However real and viable may be the concept of the economic value of the life expectancy of the deceased, i.e., the present net cash value, as an element of wrongful death damages, our statute does not limit damages to this. And for good reason, for earning power is not the only value that is destroyed by wrongful death.
Plaintiffs argue that there is an intrinsic value to life and that its loss should be compensated. Without engaging in such metaphysics, we think little reflective thought is required to recognize that there is at the very least a social and psychological (i.e., non-pecuniary) value to life over and above any pecuniary value. More to the point, we fail to understand how limitation of damages to the decedent to "net cash value" fulfills the expansive statutory contemplation of "all the damages of every kind to the decedent." Present net cash value is just part of the utility to the deceased of his life expectancy, had he lived. Our too restrictive reading of the statute implicitly assumes that the average person derives no utility from living.
There are reasons grounded in principle why these Plaintiffs recovery ought include the non-pecuniary utility of John L. McGowan's 13.6 year life expectancy. The "all damages of every kind" phrase appears twice within our wrongful death statute. It defines damages "to the decedent" recoverable in the wrongful death action  the sort of damages at issue here. The phrase further appears in defining survivors' or beneficiaries' damages. By judicial construction "all damages of every kind of any and all parties interested in the suit" includes non-pecuniary loss. See Sandifer *313 Oil Co. v. Dew, 220 Miss. 609, 71 So.2d 752 (1954) (holding that the parents, brother and sister of decedent fourteen-year-old girl are all entitled to recover damages for loss of society and companionship); Delta Chevrolet Co. v. Waid, 211 Miss. 256, 51 So.2d 443 (1951) (awarding damages for non-pecuniary loss to decedent's widow); Gulf Transport Co. v. Allen, 209 Miss. 206, 46 So.2d 436 (1950) (awarding damages for loss of society and companionship to decedent's widower and adult children). On principle it follows that "all damages of every kind to the decedent" includes non-pecuniary loss to decedent.
Our law respects and protects the non-pecuniary value of life of the elderly on a dozen other fronts. Retired persons are vested with rights of speech, religion and association the same as others. They may sue for defamation and invasion of privacy. The wrongful taking of the life of a senior citizen is no less a homicide. Close in analogy, an elderly person tortiously injured may sue for pain and suffering and diminished capacity to enjoy life and other non-pecuniary losses. Indeed, the more thought one gives the matter the more anomolous if not bizarre becomes the suggestion that wrongful death damages do not include the non-pecuniary utility to the deceased of his life expectancy.
In sum, I would grant the petition for rehearing insofar as the Courts' decision affirms denial of any "damages to the decedent." Were I charting our course, I would reverse and render so much of the judgment below as denies any recovery for the utility to John L. McGowan of his 13.6 year life expectancy had he lived. I would remand with directions that a new trial be held solely on the issue of damages, with the jury instructed to return a verdict for Plaintiffs for all damages of every kind to the decedent, John L. McGowan, including both the pecuniary and non-pecuniary value of his 13.6 year life expectancy. The jury, of course, would fix the quantum of that value.
HAWKINS, P.J., and SULLIVAN, J., join this opinion.
DAN M. LEE, P.J., joins in part by separate opinion joined by GRIFFIN, J.
DAN M. LEE, Presiding Justice, concurring in part, dissenting in part to denial of petition for rehearing:
While I agree with Justice Robertson that our wrongful death statute, Miss. Code Ann. § 11-7-13 (Supp. 1987), provides a basis for taking into consideration more than mere lost earning capacity based on life expectancy when determining damages, in my opinion the jury in this case was instructed to and did consider "all damages of every kind to the decedent... ." That the jury found no other damages is a conclusion we normally do not disturb under our limited scope of review, and I find their verdict to be supported by the evidence.
GRIFFIN, J., joins this opinion.